FILED

12/05/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 17-0047

DA 17-0047

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2017 MT 302N

IN RE THE PARENTING OF A.B.S.,

    a Minor Child.

STEFNIE R. SUNDVAHL,

    Petitioner and Appellant,

  and

THOMAS L. BRINKERHOFF,

    Respondent and Appellee.

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DR-11-609(D)
Honorable Stewart E. Stadler, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

        Katherine P. Maxwell, Maxwell Law, PLLC; Kalispell, Montana

    For Appellee:

        Paul D. Sullivan, Measure, Sampsel, Sullivan & O'Brien, PC; Kalispell, Montana

Submitted on Briefs:  November 8, 2017

Decided:  December 5, 2017

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1     Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent.  Its case title, cause number, and disposition shall be included in this Court's quarterly list of non-citable cases published in the Pacific Reporter and Montana Reports.

¶2     Stefnie Sundvahl (Stefnie) appeals from the District Court's order establishing a parenting plan, specifically, the court's incorporated order determining interim child support, entered within a contentious and complicated proceeding in the Eleventh Judicial District Court, Flathead County.  Thomas Brinkerhoff (Thomas) argues that Stefnie's appeal does not constitute a justiciable controversy, but merely an academic exercise, because the parties' child, A.B.S., now resides with him, and no support will be owed to Stefnie.  However, because the District Court's order determined the back support owed to Stefnie for the time period that A.B.S. resided with her, we conclude the controversy is justiciable.

¶3     A.B.S. was born in September 2011.  The parties were never married, and Thomas ended the relationship with Stefnie prior to the birth of A.B.S.  From her birth until January 2016, A.B.S. resided with Stefnie.  In January 2016, Stefnie was arrested for DUI and criminal child endangerment after having an automobile accident.  A.B.S. was in Stefnie's vehicle at the time.  A.B.S. was thereafter removed from Stefnie's care and placed with Thomas in California, where A.B.S. has since resided and is apparently doing well.

¶4    Stefnie filed a petition for a parenting plan shortly after the birth of A.B.S.  On January 25, 2012, a hearing was held regarding an interim parenting plan and interim child support, the Honorable David Ortley presiding.  At the hearing, Stefnie testified regarding lavish vacations she and Thomas had enjoyed while they were dating, and that Thomas owned several homes across North America.  Thomas testified that he has no income, and that he lived "on the proceeds of the wealth that I created . . . ."  Thomas introduced his 2010 U.S. tax return, which showed a negative adjusted gross income, and his Canadian returns, which stated an income of $41,110.  On cross examination, Thomas testified that he had sold his drilling company in 2007 for $7.5 million dollars and owns several other businesses.  Thomas acknowledged that he had access to much more than his stated income of $41,110 to "be able to enjoy life."  Thomas acknowledged that he spends significant sums each year on travel, but offered that much of it was business-related, to manage his wealth.  Thomas could not provide a specific amount of the money he spends each year.  Stefnie's counsel elicited cost estimates from Thomas for his travel in 2011, which could reasonably equal several hundred thousand dollars.

¶5    The parties served each other with discovery.  Stefnie requested detailed financial information from Thomas, who objected to much of the discovery.  Stefnie filed a motion to compel, and Thomas requested a protective order.

¶6    Unfortunately, the District Court made no rulings in the case for nearly five years.  The parties' discovery issues were never addressed.  On April 25, 2016, the case was re-assigned to the Honorable Stewart R. Stadler.  Trial was held, starting on August 5, 2016, despite the unresolved discovery issues.  However, the parties agreed that the

3

necessary evidence for the determination of interim child support had been presented at the January 2012 hearing. Based on this stipulation, the District Court determined interim child support by imputing income to both parties:

> Considering his living and lifestyle expenses testified to at the January, 2012 hearing and the child support calculation prepared by Mr. Bourdeau, the Court would impute income to Tom for child support purposes in the amount of $300,000 annually. The Court would also impute income to Stefnie at minimum wage. Considering this Finding, each party is to submit proposed child support calculations . . . the Court will grant appropriate credit to Tom for payments previously made . . . .

In the child support worksheet adopted by the District Court, Stefnie and Thomas' imputed incomes were reduced by estimated state and federal taxes, which reduced Thomas' imputed annual income to a net amount of $186,958. Thomas was ordered to pay $2,300 per month interim child support from the time of A.S.B.'s birth through January 2016, when he assumed physical custody of the child. He was given credit for his voluntary payment of Stefnie's lease and other expenses during that time, and, based upon these calculations, was ordered to pay Stefnie $5,930 in arrearages. On appeal, Stefnie argues the District Court erred by imputing only $300,000 in annual income to Thomas, when the testimony from the January 2012 hearing suggested he had expenses of somewhere between $40,000 and $100,000 per month. She suggests that imputation of $500,000 in annual income would be appropriate.

¶7    We review an award of child support for abuse of discretion. *Albrecht v. Albrecht,* 2002 MT 227, ¶ 7, 311 Mont. 412, 56 P.3d 339 (citations omitted). In deciding whether a district court abused its discretion, we determine whether the trial court acted arbitrarily

4

without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice. *Albrecht*, ¶ 7 (citations omitted).

¶8 For the purpose of child support, income is defined as "actual income, imputed income . . . or any combination thereof which fairly reflects a parent's resources available for child support." Admin. R. M. 37.62.105(1). Imputed income "means income not actually earned by a parent, but which is attributed to the parents based on the provisions of this rule." Admin. R. M. 37.62.106(1). "It is appropriate to impute income to a parent . . . when the parent . . . (c) fails to produce sufficient proof of income . . . ." Admin. R. M. 37.62.106(2). "In all cases where imputed income is appropriate, the amount is based on the following: (a) the parent's recent work history; (b) the parent's occupational and professional qualifications; and (c) existing job opportunities and associated earning levels in the community or the local trade area." Admin. R. M. 37.62.106(3).

¶9 Determining Thomas' actual income from the testimony provided at the 2012 hearing was a difficult task. While Stefnie argues that the District Court "had no evidence before it supporting the finding that Tom's income was $300,000 annually," neither was there evidence proving a different amount. No specific or documented income amounts were introduced. Information about Thomas' travel and travel expenses, which Thomas related to business purposes, was largely speculation and estimation, and did not quantify his personal income. As Thomas argues, "unresolved discovery disputes have left the record incomplete; but Stefnie consented to having child support determined on that record." Despite the delays in the proceeding, Stefnie could have pursued her motion to compel Thomas' financial records to obtain appropriate data, but instead elected to

5

stipulate to a determination of interim support based upon the 2012 hearing alone. This provided little specific information to the District Court on which to make the determination.

¶10 Considering the state of the record, we conclude the District Court did not abuse its discretion by imputing income to Thomas, and in determining the amount to be $300,000 per year. We acknowledge the child support guidelines are not well suited to complicated finances like Thomas', and that a detailed review of Thomas' finances may have required a greater support payment.[1] However, the District Court was not provided with such a review, and we cannot conclude the court acted arbitrarily or exceeded the bounds of reason.

¶11 Stefnie argues the District Court should not have relied on the calculations done by Mr. Bourdeau in determining imputed income, because his report and testimony were never properly admitted. While this was an evidentiary error, Mr. Bourdeau's conclusions were not inconsistent with the testimony at the 2012 hearing, on which the District Court properly relied in accordance with the parties' stipulation, and we conclude the error was harmless. Considering the evidence of Thomas' work history and qualifications as a business owner and manager, $300,000 is a reasonably imputed annual income for Thomas.

¶12 Finally, Stefnie argues that the District Court should not have decreased Thomas' imputed income to account for estimated state and federal taxes. Stefnie argues that Thomas, given his stated negative adjusted gross income, pays no income taxes, and thus

---

[1] "The net value of a parent's assets may be considered for child support . . . ." Admin. R. M. 37.62.105(1)(b).

6

the District Court should not have given Thomas credit for paying income taxes. However, imputation of income does not determine actual income, but is merely an assumption of what a party would likely earn if they were properly employed. Upon that assumption, imputed income also considers imputed tax liability, and we conclude the District Court did not abuse its discretion in determining support based upon these considerations.

¶13 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by the clear application of applicable standards of review. The District Court's ruling was not an abuse of discretion.

¶14 Affirmed.


/S/ JIM RICE


We concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ DIRK M. SANDEFUR